CENTRAL NATIONAL BANK OF
POTEAU, Oklahoma, Appellant,

v.

Michelle McDANIEL, As Administratrix
of the Estate of Tommy
Miller, Appellee.

No. 65333.

Court of Appeals of Oklahoma.

Dec. 9, 1986.

Rehearing Denied Jan. 27, 1987.

Certiorari Denied March 24, 1987.

Richard F. Campbell, III and Rebecca J.
Sherwood, Oklahoma City, for appellant.

Ronald N. Ricketts, Tulsa, for appellee.

HANSEN, Judge:

The following facts are undisputed. On
February 4, 1980, Bob Thompson and Coal
Washer Rental Corporation (Coal Washer)
entered into a written agreement designat-
ed as an escrow agreement in which

Thompson agreed to buy in installments a wet wash coal plant for $670,000 from Coal Washer. The agreement stated such sum had been deposited in Central National Bank of Poteau (Plaintiff) by Thompson, and that Plaintiff would act as escrow agent for the installment payments thereunder. Tommy Miller (Miller), Plaintiff's president and director, signed the escrow agreement on behalf of Plaintiff even though the $670,000 had not been and was not subsequently deposited.

Later, Thompson met with Ben Weerts, President of Coal Washer, and made cash installment payments directly to Weerts in contravention of the terms of the escrow agreement. The second installment payment mysteriously disappeared when Thompson and Weerts reportedly left the money in a plastic bag on the seat of Thompson's pickup.

On April 22, 1980, Coal Washer brought an action[1] in the United States District Court for the Eastern District of Oklahoma against Plaintiff and Thompson alleging the missing and final installments had not been paid. On October 22, 1980 the jury awarded Coal Washer $470,000, the amount prayed for in its complaint, costs and attorney fees.[2] Plaintiff paid the judgment October 17, 1983.

On June 22, 1984, Plaintiff filed the instant case against Michelle McDaniel as Administratrix of the Estate of Tommy Miller (Defendant) seeking damages in the amount paid in settlement of the federal action. Plaintiff alleged as a result of Miller's wrongful actions, Plaintiff was forced to pay damages to others and thus made claim against Defendant for indemnification.[3] It further alleged Miller's wrongful acts constituted a breach of the standard of care and duty owed to Plaintiff and resulted in injury and damage to Plaintiff arising from payment of the federal court judgment. Plaintiff prayed for an award of damages in the amount of $600,000.

Defendant moved for summary judgment on the grounds Plaintiff's cause of action was barred by the statute of limitations. The trial court sustained the motion. In its order the trial court noted the key question was whether Plaintiff's lawsuit was one for implied indemnity thus avoiding the limiting function of 12 O.S. 1981 § 95,[4] or a direct tort action unrelated to indemnity and thus barred by § 95. Plaintiff appeals the above order.

The threshold question herein is whether the right of indemnification is available to Plaintiff under Oklahoma law. The prob-

1. The federal action set forth two causes of action against the bank (1) breach of contract (escrow agreement) and (2) common law fraud. The common law fraud cause of action was withdrawn before trial and was not submitted to the jury.

2. On January 20, 1983 the United States Court of Appeals for the Tenth Circuit affirmed the judgment. The only issue before the Tenth Circuit was whether the trial court properly instructed the jury that Central National Bank was bound if it made a material representation relied on by Coal Washer that the money was in the account. The Tenth Circuit noted the jury was instructed no valid escrow existed absent a deposit of funds, and it was stipulated by the parties there had been no deposit.

   On October 5, 1983 the United States Supreme Court denied Plaintiff's Petition for a Writ of Certiorari.

3. International Insurance Company was originally named as a defendant herein, however, the trial court sustained International's demurrer and dismissed it from the lawsuit on October 10, 1984.

4. 12 O.S. 1981 § 95 Second and Third provide: Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action shall have accrued, and not afterwards:

   ·  ·  ·  ·  ·

   Second. Within three (3) years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty; and an action on a foreign judgment.
   Third. Within two (2) years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.

   ·  ·  ·  ·  ·

lems surrounding a determination of the availability of indemnification to a bank or other corporate entity by an employee who has caused it to pay a judgment have never been specifically addressed by the Oklahoma Supreme Court.

██ Historically indemnity is a broad term covering a wide range of situations. It encompasses two basic concepts; one, indemnity against liability in the sense of giving security; and two, indemnity against loss in the sense of compensation for actual damages. Indemnity against liability gives rise to a claim against indemnification on default, whereas indemnity against loss is litigable only after the indemnitee has satisfied the obligation.[5]

Indemnity has its origins in contract, and traditionally has been regarded as shifting loss from one person who has been compelled to pay to the shoulders of another who ought to bear the loss.[6] It is compensation given to make the person whole from a loss already sustained. In this respect Plaintiff's action is one for indemnity against its loss.

██ The right to indemnity is not limited to cases where there is an express agreement to that effect. A right to implied indemnity may arise out of a contractual or a special relationship between parties and from equitable considerations. In the case of noncontractual indemnity, the right rests upon fault of another which has been imputed or constructively fastened upon him who seeks indemnity.[7]

The law of indemnity in Oklahoma is stated in *Porter v. Norton-Stuart Pontiac-Cadillac of Enid*, 405 P.2d 109 (Okla.1965): " * * * one *constructively* liable for a tort is generally held entitled to indemni-

ty from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute of by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter whether contractual relations exist between them or not." 27 Am.Jur. § 18 (1968) (Emphasis supplied.)

Because no express contract of indemnification against liability exists in the instant case, Plaintiff's right to indemnification for its *loss* could arise if Plaintiff's liability to Coal Washer was the result of Miller's intentional or negligent acts.[8]

Defendant contends, however, Plaintiff is not entitled to indemnification. She asserts that in the federal action Plaintiff was not held liable to Coal Washer on a tort theory, but rather on a breach of contract theory, and further asserts that indemnity requires there be two parties liable in tort.[9]

While Oklahoma does not have a statutorily unrestricted right of contribution among joint tort feasors, it does recognize a lenient exception granting a right of indemnity when one who is only constructively liable to an injured party and who is in no manner responsible for harm is compelled to pay damages because of the tortious act of another.[10] Here we do not deal with a situation where two persons are jointly liable in tort to a third person. Thus Defendants argument addressed to the lenient exception rule contained in the RESTATEMENT (SECOND) OF TORTS § 886(B) (1979) is not relevant.

5. *Potter v. Wilson*, 609 P.2d 1278, 1280 (Okla. 1980); *Chicago, Rock Island & Pacific R. Co. v. Davila*, 489 P.2d 760, 764 (Okla.1971).

6. *Radford Shelton Associates Dental Laboratory Inc., v. Saint Francis Hospital Inc.*, 569 P.2d 506 (Okla.App.1976).

7. *See* 41 Am.Jur.2d *Indemnity* §§ 19, 20 (1969).

8. *Peak Drilling Co. v. Halliburton Oil Well Cementing Co.*, 215 F.2d 368 (10th Cir.1954).

9. *McKinley v. Willow Const. Co., Inc.*, 693 P.2d 1023 (Colo.App.1984).

10. *Braden v. Hendricks*, 695 P.2d 1343 (Okla. 1985).

In order to maintain an indemnity action, it is unnecessary that the root of Plaintiff's liability to Coal Washer have been determined in the prior federal action. Defendant's responsibility for Plaintiff's loss could be based on any of several theories.[11] The main divergence between Plaintiff and Defendant is whether the right of indemnity is only available in the limited situation of joint tortfeasors. It is clear the right of indemnification exists in many other circumstances.[12] The RESTATEMENT OF RESTITUTION § 76 (1937) is more applicable than the RESTATEMENT (SECOND) OF TORTS.[13]

In *United States Fidelity and Guaranty Co. v. Dawson Produce Co.*, 180 Okl. 119, 68 P.2d 105 (1937) our Supreme Court, in a discussion concerning the conclusiveness of former judgments in indemnification actions,[14] held a former judgment not conclusive as to facts not in issue or not determined in the former action. It further held "if·the facts through which the indemnitee claims indemnity were not litigated or clearly determined, they may be litigated in the action against the indemnitor through evidence additional to the record in the former action."

■ The issues of Plaintiff's constructive liability and Miller's primary liability were not litigated or clearly determined in the federal action. The question of Miller's

responsibility for Plaintiff's loss, adequately framed by the instant pleadings, and the basis of Plaintiff's liability remain to be determined in this action. As a result, we hold the right of indemnity is available to Plaintiff.[15]

Plaintiff's petition clearly sets forth a cause of action seeking indemnification, inasmuch as it alleges its payment of the judgment in the federal action was predicated on Miller's misconduct. We must now determine whether Plaintiff's action for indemnity is barred by the statute of limitations.

The statute of limitations does not begin to run against a cause of action until it has accrued,[16] and it generally accrues "when the litigant first could have maintained his action to successful conclusion.[17]

■ Although Defendant suggests Plaintiff could have joined Miller in the federal action, it remains that he was not injured until he paid the judgment in the federal action (October 17, 1983). A cause of action for indemnity does not arise until the former judgment is paid.[18] Even though we do not address the propriety of Plaintiff's not having instituted a third party action in the federal action, "[I]t is indeed difficult to fathom going to trial on [a] Third Party Complaint when the cause of action accrued therein has not arisen or

11. For example, as an officer of Plaintiff he may have breached a fiduciary duty and thus be subject to liability. (*See Gulf Coast Western Oil Co. v. Trapp*, 165 F.2d 343 (10th Cir.1947)). He even may have intentionally created civil liability against Plaintiff (*See* RESTATEMENT (SECOND) OF TORTS § 871A (1979)). Or he may have been actively negligent in his dealings.

12. *See generally, Oneida v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985).

13. RESTATEMENT OF RESTITUTION § 76 provides: "A person, who in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

14. *United States Fidelity and Guaranty Co. v. Dawson Produce Co.*, unlike the instant case, dealt with an express contract of indemnity.

15. Although Plaintiff also asserts a statutory right of indemnity exists under 18 O.S. 1981 § 1.176, we deem it unnecessary to determine this issue inasmuch as an implied right of indemnity does exist.

16. 12 O.S. 1981 § 92.

17. *Oklahoma Brick Corporation v. McCall*, 497 P.2d 215 (Okla.1972).

18. *Fruehauf Trailer Co. v. Gilmore*, 167 F.2d 324 (10th Cir.1948); *Chicago, Rock Island & Pacific R. Co. v. Davila*, 489 P.2d 760 (Okla.1971).

accrued when the trial began."[19] Therefore, because the action did not accrue until October 17, 1983, applying either 12 O.S. 1981 § 95 Second or Third to this action, Plaintiff was not barred from bringing suit when he filed his action on June 22, 1984.

REVERSED AND REMANDED for a trial of the proceedings.

HUNTER, J., concurs.

HOWARD, P.J., not participating.

---

**19.** *Beights v. W.R. Grace & Company,* 62 F.R.D. 546, (W.D.Okla.1974).